IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| TAMI WEST, ) | |
| ) | |
| Plaintiff, ) | Case No. 05-1027-KI |
| ) | |
| vs. ) | OPINION AND ORDER |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

James S. Coon
Swanson, Thomas & Coon
820 S.W. Second Avenue, Suite 200
Portland, Oregon 97204

      Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

>Richard A. Morris
>Social Security Administration
>701 Fifth Avenue, Suite 2900
>M/S 901
>Seattle, Washington  98104-7075
>
>>Attorneys for Defendant

KING, Judge:

Plaintiff Tami West brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

After reviewing West's medical records, the ALJ found that West had impairments which were severe in combination: fibromyalgia, morbid obesity, mild lumbar osteoarthritis, asthma, sleep apnea, and a depressive disorder secondary to a general medical condition. The ALJ noted evidence of West noncomplying with her doctors' treatment recommendations and of failing to attend appointments. He found West not to be entirely credible. The ALJ concluded that West retained the residual functional capacity to perform sedentary exertion work with several nonexertional limitations added. Based on expert vocational testimony, the ALJ found that West

could not return to her past work but could work as a small component assembler in the medical/optical field, an information clerk, and a parking lot cashier. By changing the hypothetical to include a new limitation of working in a clear air environment, the ALJ found that West could work as a small products assembler or a cleaner/polisher of small parts, and consequently was not disabled under the Act.

## FACTS

Tami West, who was 46 years old at the time of the decision,[1] claims to be disabled since January 7, 2000. She has a ninth grade education and has worked as a certified nurse assistant and in-home care worker.

West lives with her 20 year old daughter in an apartment which her friends and family help her to clean. They also do most of the shopping, cooking, and laundry for West.

West takes two or three naps a day, each lasting 30 minutes to two hours. She experiences fatigue which requires her to rest in between doing any task that takes longer than ten to fifteen minutes. West no longer engages in many of her hobbies and activities that she used to in the past because she can only do them for ten to fifteen minutes at a time. West requires three hours to get up, shower, and dress due to the need to rest during the activity. West is in bed ten to twelve hours each night but arises every 20 to 30 minutes to get a drink and at least ten other times to use the bathroom.

---

[1] The ALJ issued the first decision on January 10, 2003. When West asked for review of that decision, the Appeals Council found that the hearing tape was lost, making the record incomplete. The Appeals Council vacated the decision and remanded for further proceedings. After a new hearing plus a supplemental hearing, the ALJ issued a decision on February 16, 2005, which is the one being appealed in this court.

Page 5 - OPINION AND ORDER

West describes burning, stinging, spasming, and aching pain in every fiber in her body lasting constantly in severity ranging from four to ten on a scale of ten being the worst possible pain. West claims to have 15 days a month when she has pain at the level of ten. Her doctors have prescribed narcotic painkillers.

West suffers from depression and takes an antidepressant. Five to seven days a month, West does not leave her room.

West also suffers from swelling in her hands, knees, and feet. Two to four times a day West elevates her feet for 15 to 20 minutes. If she fails to do this, her feet are so swollen that she says she cannot walk.

## DISCUSSION

The Commissioner agrees with West that the ALJ cannot rely on the testimony of vocational expert Dr. Hanoch Livneh, who presumably testified at the first hearing, because there is no record from that hearing. Further, the Commissioner agrees that the jobs identified by Dr. Livneh- small component assembler in the medical/optical field, information clerk and parking lot cashier–cannot be used to support the ALJ's conclusion in step five that West can perform other work available in the national economy. Consequently, the ALJ's conclusion must rely on the jobs of small products assembler and cleaner/polisher of small parts, which were identified by vocational expert Patricia Ayerza in the later hearing for which a record exists.

The Commissioner's concession moots two of West's objections to the ALJ's opinion. The remaining objection concerns the Department of Disability Services ("DDS") doctors' conclusion on the Psychiatric Review Technique Form ("PRTF") that West had a moderate deficiency in maintaining concentration, persistence or pace. West objects that the ALJ included

no limitation at all in this regard when he posed the hypothetical question to the vocational expert, Patricia Ayerza. Finally, West notes that the vocational expert testified that the jobs she described are production based and a worker would not likely be retained if she could not produce at a rate of the 80th percentile or above.

The Commissioner contends that the DDS moderate rating on the PRTF is the only portion of the form used in step three of the sequential evaluation process. The Commissioner argues that these PRTF categories are not precise enough to assess the residual functional capacity that forms the basis of step four and five decisions. For the residual functional capacity, the Commissioner contends that the Mental Residual Functional Capacity Assessment ("MRFCA"), also completed by DDS, provides more specific findings on West's limitations. The Commissioner claims that the ALJ's residual functional capacity findings and hypothetical accommodated the MRFCA findings.

The PRTF is completed at step two and three of the evaluation to determine if the claimant has severe mental impairments which meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §§404.1520a(c) (DIB), 416.920a(c) (SSI). The PRTF's categories are considered broader than the "detailed assessment" required in the residual functional capacity finding and vocational hypothetical, in steps four and five.

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a
> and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment

>used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8P, *4. See Howard v. Massanari, 255 F.3d 577, 582 (9th Cir. 2001) (PRTF containing a limitation of "often having deficiencies of concentration, persistence or pace" which was interpreted into a functional capacity assessment of being "able to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function" was adequately captured in a hypothetical for "someone who is capable of doing simple, repetitive, routine tasks").

Thus, the degrees of limitations on the PRTF are not transferred directly into the residual functional capacity determination documented in the MRFCA. Instead, the ALJ interprets the limitations to form a more detailed assessment used in step 4.

Thus, the ALJ did not err by not including the PRTF moderate limitation in maintaining concentration, persistence, or pace in the hypothetical given to the vocational expert. The limitations which must be included in the hypothetical are documented on the MRFCA.

On the MRFCA, DDS noted that West was moderately limited in three categories: (1) the ability to understand and remember detailed instructions; (2) the ability to carry out detailed instructions; and (3) the ability to maintain attention and concentration for extended periods. DDS also noted that West was "capable of simple/routine tasks" and "would have difficulty w/ some complex tasks." Tr. 205-07.

In the hypothetical question to the vocational expert, the ALJ specified a nonexertional limitation of working best in an unskilled work environment with only occasional public contact.

The vocational expert identified the jobs of small products assembler or cleaner/polisher. In response to a question from West's attorney, the expert stated that the two identified jobs were "very much production based" such that a production level lower than the 80th percentile would result in termination. Tr. 467.

Thus, the precise question is whether the limitation of an unskilled work environment adequately captures the DDS limitations, summarized by the statement that West was capable of simple routine tasks but would have difficulty with some complex tasks. Although the limitation could have been expressed more elaborately, I conclude that the ALJ's hypothetical is adequate.

Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568. That definition encompasses the residual functional capacity limitation of simple/routine tasks.

West's objection concerning her ability to perform at a production rate is based on her testimony of the need for frequent breaks. Because the ALJ found that West lacked credibility, there was no need for the ALJ to include a limitation on this point in the hypothetical.

Accordingly, the vocational expert's testimony was based on an adequate hypothetical question and the denial of benefits is supported by substantial evidence in the record.

///


///

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this ____6th_____ day of July, 2006.

                                                /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge